## Commonwealth v. Medford's, Inc

*Bernard V. O'Hare, Jr.*, Assistant District Attorney, and *Daniel L. McCarthy*, for Commonwealth.

*Norman Seidel* and *John Edward Sheridan*, for appellants.

PALMER, J., January 26, 1959.—The captions of two of these three appeals from summary convictions under The Commodity Act [1] of July 24, 1913, P. L. 965,

---

[1] The pertinent provisions of which are:

"Section 1. . . . The word 'commodity,' as used in this act, shall mean anything, goods, wares, merchandise, compound, mixture or preparation, products of manufacture of any tangible personal property, which may be lawfully kept, sold, or offered for sale. . . .

"The word 'package,' as used in this act, shall mean everything containing one or more than one unit of any commodity, tied or bound together, or put up in box, bag, pack, bundle, container, bottle, jar, can or any other form of receptacle or vessel, not considered as an approved measure, except cases, cartons, crates,

as amended, 76 PS §§241-250, have, by stipulation, been amended to read as above designated.[2]

The question posed is whether certain processed meat products, wrapped in transparent plastic coverings, and by trade custom sold both at wholesale and retail by weight rather than by package, fall within the "marked weight" provision of that statute.

The facts of the three cases are not in dispute and may be briefly summarized. On January 17, 1958, a State Inspector of Weights and Measures and an Inspector of Weights and Measures of the City of Bethlehem visited Kochis' Market in the latter city. They took into their possession from a display cooler case two boneless ham butts, which had been manufactured and distributed by defendant Medford's, Inc., each of which was enclosed in a transparent cellophane

---

bundles or bales used for bulk shipping or storage: Provided, That enclosed packages are marked as to weight, measure or numerical count. . . .

"Section 2. . . . (2) All meat and meat products, poultry and poultry products, except eggs, shall be sold by weight; only eggs may be sold by numerical count. . . .

"Section 2.1. All commodities not considered as packages within the meaning of the act or labeled as to net contents at the time of sale, shall be counted, measured or weighed in full view of the purchaser at the time of sale . . . and statement of result of such count, measure or weight to be made to the purchaser by the person making the sale. . . .

"Section 7. No person shall distribute or sell or have in his possession with intent to distribute or sell any commodity in package form, unless the net quantity of the contents shall be plainly and conspicuously marked on the outside of the package in terms of weight, measure, or numerical count. . . ."

Section 8 provides that violators of the act are to be prosecuted in summary proceedings.

[2] "Commonwealth of Pennsylvania vs. Edward Medford" has been changed to "Commonwealth of Pennsylvania vs. Medford's, Inc., a Pennsylvania corporation," and "Commonwealth of Pennsylvania vs. Howard Miller" to "Commonwealth of Pennsylvania vs. Berks Packing Company, a Pennsylvania corporation."

covering. They also took a bologna ring which had been manufactured and distributed by Berks Packing Company and which was similarly covered, together with three knockwursts, which had been manufactured and distributed by defendant Dietz & Watson Co., and which were enclosed in a polyethylene casing closed with a clamp, each knockwurst being first enclosed in an animal casing. The weight of none of these articles was marked on the wrapping.

Ham butts vary in weight as do bolognas and knockwursts. No attempt is made in their processing to keep these articles uniform in weight. Indeed, with respect to ham butts, it is undenied that it would be impossible to do so. It is also undisputed that there is shrinkage in the moisture content, and hence the weight, in each of these meat products following their manufacture. The amount of shrinkage is not constant, but depends in part upon the weather.

All of defendants' witnesses were men who have been directly engaged in the meat processing business for extended periods of time. Mr. William L. Medford, who testified on behalf of Medford's, Inc., currently is the President of the Pennsylvania Meat Packers Association, Director of the American Meat Institute and Treasurer of the Independent Meat Packers Association. Mr. B. C. Dickinson, who also testified on behalf of Medford's, Inc., has been the Vice-president of the American Meat Institute for 18 years and formerly was President of the Pennsylvania Meat Packers Association. Mr. Charles A. Boylan is the President of Berks Packing Company, a defendant, and Mr. Howard C. Miller is the sales manager of that corporation. Mr. Walter A. Watson, who testified on behalf of Deitz & Watson Co., has been the Vice-president of that company since 1939 and for 30 years prior thereto was in the same business in his own name.

These witnesses testified without contradiction that it is the established custom in the meat packing and distributing business for the meat products here involved to be sold to the retailer by weight and not by piece. Upon delivery these items are weighed on the retailer's scale and invoiced to the retailer on that basis. When they are sold by the retailer to the consumer, they are sold not by the piece but by weight; that is, the consumer advises the retailer how heavy a piece he wants to buy and the retailer then weighs out that amount in plain sight of the buyer and sells it to him on that basis.

In our view these defendants have not violated the provisions of The Commodity Act. That act, being penal in nature, must be strictly construed. It is apparent that it has as its object the protection of purchasers against fraud and deception as to the quantity or amount of the commodity purchased: Sales per Package, 24 Dist. R. 671 (1915).

There can be no question but that these particular meat products are "commodities" under the terms of the act, and as we understand defendants' argument, they do not deny this.

We also believe these items, individually encased as they are in cellophane or cellophane type materials, constitute "packages" as that term is defined in the act. We are supported in this view by Weight Marking on Meat Packages, 14 D. & C. 2d 279 (1958).

We believe, however, that a fair reading of the statute, keeping in mind its purpose, and considering its penal nature, reveals that packaged meat products are required to have their weight indicated on them only when they are sold by package and not, as here, by weight. Thus in Weight Marking on Meat Packages, supra, at page 282, it is noted that: "Under our interpretation of the provisions of The Commodity Law:

(1) Meat products must be sold by weight; (2) meat products when wrapped in cellophane or similar materials in the manner herein described constitute a package as defined by the act, and (3) the act requires the net weight of the contents to be plainly marked on the package *when the product is sold in package form and not by weighing it in front of the customer.*" (Italics supplied).

While there were amendments to The Commodity Act after the Sales per Package opinion, supra, the reasoning expressed in the following quotation therefrom is equally applicable under the act as amended: "Your specific question is, 'under the provisions of that section, do hams and bacon covered with paper or cloth, or sold in wrappings of any kind, constitute a package within the meaning of the law?'

"The answer to this question suggests itself very readily when it is borne in mind that the object of this legislation is to protect persons in the purchase of commodities 'in package form;' in other words, where commodities are sold per package, or by the package as such, as of a given weight or quantity, without weighing or measuring. In such case, the law provides that 'the quantity of the contents shall be plainly and conspicuously marked on the outside of the package in terms of weight, measure or numerical count,' obviously so that the purchaser will in that way be advised and know the quantity of the contents received. The term 'package form' was accordingly intended to apply to such commodities as are put up in artifically determined sizes or quantities, fixed by the manufacturer or merchant, and intended to pass as such."

It is uncontradicted that these meat products shrink in varying amounts depending in part on the weather. With this in mind, we fail to see how the purpose of the act, which is to protect the purchasers against

fraud and deception as to quantity or amount, would be furthered by requiring the manufacturer to indicate on the packaged meats its weight *at the time of its manufacture*. Indeed, if this were required, and if unscrupulous retailers sold according to the weight so marked rather than continuing the present custom of weighing the items in the presence of the customer, the act would have precisely the opposite effect from that which the legislature obviously intended.

We are therefore of the opinion that the Commonwealth has failed to prove defendants guilty of violating The Commodity Act of July 24, 1913, P. L. 965, as amended, and that they should, therefore, be acquitted.

*Order*

And now, January 26, 1959, pursuant to the above opinion, the court finds defendants, Medford's, Inc., Berks Packing Company and Deitz & Watson Co., not guilty of violating The Commodity Act of July 24, 1913, P. L. 965, as amended.